757 N.W.2d 740 (2008)
2008 ND 210
In the Matter of the Oliver PEDERSON TRUST.
Kenneth Pederson, Beneficiary, Petitioner and Appellant
v.
Wells Fargo Bank, Trustee, and Darlene Bernsdorf, Co-Trustee, of the Trust created by Oliver Pederson, Respondents and Appellees.
No. 20080076.
Supreme Court of North Dakota.
November 21, 2008.
*741 Peter K. Halbach, Haugland, Halbach and Halbach, Devils Lake, ND, for petitioner and appellant.
Clark J. Bormann, Bormann & Myerchin, LLP, Bismarck, ND, for respondent and appellee Wells Fargo Bank.
Michael Ward, Eaton, Van de Streek & Ward, Minot, ND, for respondent and appellee Darlene Bernsdorf.
KAPSNER, Justice.
[¶ 1] Kenneth Pederson appeals an order denying his petition for supervision of the trust and termination of the trust, and *742 he appeals a separate order awarding attorney fees to Wells Fargo Bank of Minot, North Dakota ("Wells Fargo") and Darlene Bernsdorf. We affirm.

I.
[¶ 2] Oliver Pederson executed an irrevocable living trust agreement on December 13, 2002. The primary asset of the trust is an undivided one-half interest in real estate located in Bottineau County. Oliver Pederson's child, Kenneth Pederson, owns the other undivided one-half interest in the real estate. Oliver Pederson named Wells Fargo trustee, with Darlene Bernsdorf as co-trustee. The income of the trust was to be paid to or used for the benefit of Oliver Pederson, and at his death, it was to be paid to Darlene Bernsdorf. Upon the death of Darlene Bernsdorf, the income and principal of the trust was to be distributed to Oliver Pederson's "child per stirpes," less certain personal items. Oliver Pederson died on July 5, 2003; thus, Darlene Bernsdorf is presently an income beneficiary, and Kenneth Pederson is the sole remainder beneficiary.
[¶ 3] In March 2007, Kenneth Pederson petitioned the district court, seeking supervision of the trust, termination of the trust, or, alternatively, appointment of a successor trustee. He alleged: The trustee had not exercised full power and responsibility to manage the trust estate; the trustee failed to pay property taxes on the primary asset of the trust for more than three years; the trustee failed to provide maintenance and care for the property; and the trust failed to serve any trust purpose or to be any benefit to Kenneth Pederson. Wells Fargo responded. It denied all allegations by Kenneth Pederson which suggested Wells Fargo failed to fulfill its duties under the terms of the trust agreement, and it asserted it has prudently managed the assets of the estate conveyed to the trust.
[¶ 4] The district court held a hearing on April 23, 2007, and it filed an order on July 9, 2007. First, the district court addressed whether the trust should be supervised. While the district court found the trustee had not paid its one-half of the property taxes, it determined this was due to lack of trust funds, as a result of legal fees incurred by the trust. The present case was the third brought by Kenneth Pederson; in the first, he challenged Oliver Pederson's competency, and in the second, he sought to dissolve the trust. Additionally, the district court determined since Kenneth Pederson owns one-half of the property, only one-half of the waste can be attributable to the trust. At the hearing, when asked if Darlene Bernsdorf had done anything wrong as trustee, Kenneth Peterson testified: "She hasn't done nothing so how could she do anything wrong?" When asked if Wells Fargo had done anything wrong as trustee, Kenneth Peterson testified: "I think they tried their best. I will give them credit." The district court determined Kenneth Pederson had not established any justification for supervision of the trust.
[¶ 5] Second, the district court discussed whether the trust should be terminated. It found one of the purposes of the trust was to provide Darlene Bernsdorf income, and even though the distribution to Darlene Bernsdorf would be modest, this purpose could still be fulfilled. The district court determined the goals of the trust were achievable; therefore, it denied Kenneth Pederson's petition for termination of the trust.
[¶ 6] Third, regarding the appointment of a successor trustee, the district court found Kenneth Pederson believed Wells Fargo was doing a good job as trustee. It also found Kenneth Pederson conceded *743 Darlene Bernsdorf had done nothing wrong which would constitute grounds for her removal. Therefore, the district court did not remove either trustee and did not name a successor trustee.
[¶ 7] Finally, the district court addressed costs and attorney fees. The trustees had requested Kenneth Pederson be required to pay the fees of the trust pertaining to the present legal action. The district court noted this is the third lawsuit initiated by Kenneth Pederson, with the first two being unsuccessful. It stated the previous lawsuits caused the trust to incur legal fees, which depleted the income of the trust and created the situation of "impossibility" that, in the present lawsuit, Kenneth Pederson cites as support to terminate the trust.
[¶ 8] The district court determined Kenneth Pederson violated N.D.R.Civ.P. 11(b)(1), because the present lawsuit was brought for an improper purpose. Kenneth Pederson's purpose was to "merely defeat the express purpose of this trust in providing income for Darlene [Bernsdorf]." In addition, the district court found Kenneth Pederson violated N.D.R.Civ.P. 11(b)(3). It held, "while there may be some factual or evidentiary support for the contention that the trust's purpose has failed, or is impossible to achieve, there is also ample evidentiary support that it was Kenneth [Pederson] who created this situation." Therefore, the district court entered an order to show cause why Kenneth Pederson, his attorney, Peter Halbach, and Haugland, Halbach & Halbach Law Firm, or all of the above, should not be liable for N.D.R.Civ.P. 11 sanctions.
[¶ 9] On August 10, 2007, the district court held a hearing regarding attorney fees, and on January 22, 2008, it filed an order. The district court held the amount due and owing to Wells Fargo was $2,497.61, and the amount owing to Darlene Bernsdorf was $2,362.50. It deemed the costs and attorney fees be assessed jointly and severally against Kenneth Pederson and his attorney, Peter Halbach.
[¶ 10] Kenneth Pederson filed a notice of appeal, arguing the district court improperly denied the petition for supervision of the trust, improperly denied the petition to terminate the trust, and improperly awarded attorney fees to the trustees.

II.
[¶ 11] On appeal, Kenneth Pederson asserts the district court improperly denied court supervision of the trust. Section 59-04-02, N.D.C.C., provided: "Any trustee, beneficiary, or person interested in a trust may file a petition with the clerk of the district court praying that the administration of the trust be supervised." Chapter 59-04, N.D.C.C., was repealed by 2007 N.D. Sess. Laws ch. 549, § 27, effective August 1, 2007. However, at the time of the district court's order filed on July 9, 2007, N.D.C.C. ch. 59-04 governed the administration of trusts; therefore, it governs this issue.
[¶12] While N.D.C.C. § 59-04-02 was in effect, this Court did not address the standard of review for a district court's decision on a petition for supervision of the trust. Section 59-04-02, N.D.C.C., in part, provided: "The court, upon hearing, may enter its order that all further proceedings in the supervision of the administration of the trust must be had in that court." The plain language of the statute did not require a district court to supervise a trust simply because an interested party requests supervision. Id.; see N.D.C.C. § 1-02-02. Rather, the statute provided a district court had discretion whether to grant a petition for supervision of a trust. N.D.C.C. § 59-04-02. "When a district *744 court may do something, it is generally a matter of discretion." Waldie v. Waldie, 2008 ND 97, ¶ 11, 748 N.W.2d 683 (quoting Ackerman v. Ackerman, 1999 ND 135, ¶ 19, 596 N.W.2d 332). Therefore, the proper standard of review for this issue is abuse of discretion. "A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or if it misinterprets or misapplies the law." Id. (citing Bertsch v. Bertsch, 2007 ND 168, ¶ 10, 740 N.W.2d 388).
[¶13] Kenneth Pederson asserts the district court should have ordered court supervision of the trust. At the hearing, while being cross-examined regarding supervision of the trust by counsel for Wells Fargo, Kenneth Pederson testified:
Q Can you tell me why you want this Court to institute supervised administration of this trust?
A I just think I should be the supervisor, I guess.
....
Q Are you suggesting that you and not the Court supervise? Is that what you are asking of the Court?
A The Court can if it wants to. I wouldn't have any objection if this Court would.
Q You recognize that would increase the cost to the trust because they are required then to submit annual statements and have hearings and so forth, do you understand that?
A No.
Q Would you agree if the Court were to require supervised administration the cost for that should be paid out of the corpus of the trust instead of the income since there isn't enough income?
A No.
Q You wouldn't want that, would you?
A No.
[¶ 14] In addition, Kenneth Pederson contends if the property is not properly managed, waste will continue. He states: "Wells Fargo's policy of visiting property only every 15 months is not adequate to prevent deterioration of the property." He further asserts: "Wells Fargo shows little interest in taking care of the property which was entrusted to Wells Fargo by Oliver Pederson." However, while being cross-examined by counsel for Darlene Bernsdorf, Kenneth Pederson testified:
Q I noticed quite a few questions about the house indicating I gather you think that the trustee should be running out to check on the house?
A No.
Q You are not willing to agree to have anyone other than yourself  you are not willing to have the co-trustee run out to the house?
A Yes, that's right.
He further added:
Q Is there anything you can say in management that Darlene [Bernsdorf] has done wrong?
A She hasn't done nothing so how could she do anything wrong?
Q I gather that is a no?
A No.
Q Is there anything as to the corporate trustees you can see that they did wrong?
A I think they tried their best. I will give them credit. They are nice guys to work with, very good to work with. I know they have laws they have to follow but I get a little exasperated with some of the things that had to happen[.]
[¶ 15] The district court determined Kenneth Pederson did not establish a justification for supervision of the trust; *745 therefore, it denied the motion for supervised administration. The district court's decision to deny supervised administration, based on Kenneth Pederson's own testimony, was reasonable. Kenneth Pederson conceded he would not want the district court to supervise the trust if it meant that the cost would have to be paid out of the corpus, in the event the income was insufficient to pay for court supervision. He contends the trustees are neglecting the trust's one-half interest in the property, but at the same time, he asserts he is not willing to let the trustees on the property. He testified the corporate trustee "tried [its] best" and Darlene Bernsdorf had not done anything wrong. We hold the district court did not abuse its discretion by denying supervised administration of the trust.

III.
[¶ 16] Kenneth Pederson asserts the district court improperly denied his petition to terminate the trust. Section 59-02-17, N.D.C.C., provided: "A trust is extinguished by the entire fulfillment of its object or upon its object becoming impossible or unlawful." Section 59-03-20, N.D.C.C., provided: "When the purpose for which an express trust was created ceases, the estate of the trustee also ceases." Chapters 59-02 and 59-03, N.D.C.C., were repealed by 2007 N.D. Sess. Laws ch. 549, § 27, effective August 1, 2007. However, at the time of the district court's order filed on July 9, 2007, both chapters were in effect; therefore, they govern this issue.
[¶ 17] This Court has not established the standard of review for a district court's decision regarding termination of a trust. Whether a trust should be terminated is a mixed question of law and fact. See Tarnavsky v. Tarnavsky, 2003 ND 110, ¶ 7, 666 N.W.2d 444 (citing Tarnavsky v. Tarnavsky, 147 F.3d 674, 677 (8th Cir.1998)). This Court has held: "Where the ultimate conclusion can be arrived at only by applying rules of law the result is a `conclusion of law.'" Nygaard v. Robinson, 341 N.W.2d 349, 354 (N.D. 1983) (quoting E.E.E., Inc. v. Hanson, 318 N.W.2d 101, 104 (N.D.1982)). Here, the purpose of the trust can be determined from the trust instrument; therefore, the determination of the purpose of the trust is a conclusion of law. This Court has held: "Findings of fact are the realities as disclosed by the evidence as distinguished from their legal effect or consequences." Id. (quoting E.E.E., Inc., 318 N.W.2d at 104). A trust terminates upon its object becoming impossible. N.D.C.C. § 59-02-17. The district court determined the object of the trust can be achieved; therefore, its purpose was not frustrated. Determining whether the purpose of the trust was frustrated is a finding of fact, and in the present case, the facts the district court relied on in coming to this conclusion are undisputed. This Court reviews both conclusions of law and mixed questions of law and fact under the de novo standard of review. Burlington N. R.R. Co. v. Fail, 2008 ND 114, ¶ 5, 751 N.W.2d 188 (quoting State v. Torgerson, 2000 ND 105, ¶ 3, 611 N.W.2d 182).
[¶18] The district court noted, while Kenneth Pederson argued the purpose of the trust was impossible, the evidence did not support this assertion. The district court found the annual rent received by the trust, less yearly expenses, amounts to $466 in income per year. The district court acknowledged this is a small return; however, the purpose of the trust, to provide income for Darlene Bernsdorf, is achievable.
[¶ 19] The district court suggested the reason Darlene Bernsdorf has not received income from the trust is attributable to *746 Kenneth Pederson's actions. He is an undivided one-half owner of the real property, and he rejects the notion of renting the homestead property or renting the land for hunting, which would bring additional income to the trust. In addition, the present action is the third brought by Kenneth Pederson against the trust. Kenneth Pederson's testimony supports the proposition that he may be frustrating the purpose of the trust to prevent Darlene Bernsdorf from receiving income from the trust. He testified:
Q If I understand right almost all the things you are suggesting are that you wish Mrs. Bernsdorf not receive any income from the trust, is that correct?
A No, because she has received quite a bit from my dad. She broke him.
Q On the trust, is this mainly to avoid having her receive any income?
A What is that?
Q On the trust, I gather from what you are saying you would like her not to receive any income, is that correct?
A That's correct.
[¶ 20] Kenneth Pederson asserts one of the purposes of the trust was to provide income for beneficiary Darlene Bernsdorf. He notes the trust has not paid income to Darlene Bernsdorf; therefore, he argues the purpose of the trust is impossible. The trustees agree with Kenneth Pederson in that one of the purposes of the trust was to provide income to Darlene Bernsdorf. However, the trustees contend this purpose has not been achieved, not because this purpose is impossible, but because of the cost of litigation brought by Kenneth Pederson against the trust.
[¶ 21] At oral argument, counsel for Kenneth Pederson conceded that it is possible for the trust to produce minimal income. Therefore, this purpose of the trust, for Darlene Bernsdorf to receive income, is not impossible. N.D.C.C. §§ 59-02-17; 59-03-20. We affirm the district court order denying Kenneth Pederson's motion to terminate the trust.

IV.
[¶22] Kenneth Pederson asserts the district court improperly awarded the trustees attorney fees. Under North Dakota law, each party generally bears its own attorney fees. Strand v. Cass County, 2008 ND 149, ¶ 9, 753 N.W.2d 872 (citing Danzl v. Heidinger, 2004 ND 74, ¶ 6, 677 N.W.2d 924). However, N.D.R.Civ.P. 11(b), provides when an attorney presents a pleading, written motion, or other paper to a court, the attorney:
is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, 
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
...
(3) the allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]
If a district court determines a party has violated N.D.R.Civ.P. 11(b), it may sanction the party, attorney, or law firm. N.D.R.Civ.P. 11(c). The determination whether to impose sanctions for a N.D.R.Civ.P. 11 violation lies within the sound discretion of the district court. Strand, 2008 ND 149, ¶ 16, 753 N.W.2d 872. A district court's decision regarding N.D.R.Civ.P. 11 sanctions will not be disturbed unless this Court determines the district court abused its discretion. Dietz v. Kautzman, 2004 ND 119, ¶ 15, 681 *747 N.W.2d 437 (citing In re Estate of Dion, 2001 ND 53, ¶¶ 45-46, 623 N.W.2d 720). "Further, if there are any factual determinations relevant to the sanctions issue, this Court reviews the district court's findings under the clearly erroneous standard." Strand, 2008 ND 149, ¶ 17, 753 N.W.2d 872 (citing Simpson v. Chicago Pneumatic Tool Co., 2005 ND 55, ¶ 16, 693 N.W.2d 612).
[¶ 23] The district court determined Kenneth Pederson violated N.D.R.Civ.P. 11. The district court noted this is the third lawsuit initiated by Kenneth Pederson against the trust since Oliver Pederson died. The district court found the present lawsuit was improper, because Kenneth Pederson's purpose was to deprive Darlene Bernsdorf of income from the trust, contrary to his father's intentions. See N.D.R.Civ.P. 11(b)(1). The district court also found the lawsuit was brought without evidentiary support. See N.D.R.Civ.P. 11(b)(3). Therefore, the district court held N.D.R.Civ.P. 11(b)(1) and (3) were violated, and it sanctioned Kenneth Pederson by awarding Wells Fargo $2,497.61 and Darlene Bernsdorf $2,362.50 in attorney fees and costs. The sanctions were assessed against Kenneth Pederson and his attorney, Peter Halbach, jointly and severally.
[¶ 24] A review of Kenneth Pederson's testimony supports the district court's determination that this third lawsuit brought by Kenneth Pederson was for an improper purpose. He testified:
Q If I understand right almost all the things you are suggesting are that you wish Mrs. Bernsdorf not receive any income from the trust, is that correct?
A No, because she has received quite a bit from my dad. She broke him.
Q On the trust, is this mainly to avoid having her receive any income?
A What is that?
Q On the trust, I gather from what you are saying you would like her not to receive any income, is that correct?
A That's correct.
Kenneth Pederson's desire for Darlene Bernsdorf not to receive income from the trust is directly contrary to the purpose of the trust.
[¶ 25] The district court did not find evidence to support Kenneth Pederson's request for court supervised administration of the trust. Kenneth Pederson asserted Wells Fargo was doing a good job, and he did not directly point to anything Darlene Bernsdorf did wrong. While the district court indicated there may be some evidentiary support for his claim that the purpose of the trust failed, it determined there was sufficient evidence that Kenneth Pederson created this situation. We hold the district court's factual determinations as to the sanctions were not clearly erroneous, and it did not abuse its discretion by imposing sanctions. We affirm the district court's award of attorney fees to Wells Fargo and Darlene Bernsdorf.

V.
[¶ 26] The trustees argue they are entitled to attorney fees and costs on appeal. Under N.D.R.App.P. 38, an award of attorney fees is discretionary with this Court. Williams v. State, 405 N.W.2d 615, 625 (N.D. 1987). We decline to award attorney fees. Costs are awarded to appellees.

VI.
[¶ 27] We have considered Kenneth Pederson's remaining arguments, and we conclude they are meritless. The district court orders are affirmed.
[¶ 28] MARY MUEHLEN MARING, Acting C.J., DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., and WADE L. WEBB, D.J., concur.
*748 [¶ 29] The Honorable WADE L. WEBB, D.J., sitting in place of VANDE WALLE, C.J., disqualified.